UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV20-00587-JGB-(KKx) | Date | May 29, 2020 |
|---|---|---|---|
| Title | *Trayvion Terrell v. Samuel, Son & Co. (USA), Inc., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiff Trayvion Terrell's Motion to Remand (Dkt. No. 18); and (2) VACATING the June 1, 2020 Hearing (IN CHAMBERS)

Before the Court is Plaintiff Trayvion Terrell's motion to remand the case to Riverside County Superior Court. ("Motion," Dkt. No. 18). The Court determines the Motion is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court DENIES the Motion. The hearing set for June 1, 2020 is VACATED.

## I. BACKGROUND

On February 3, 2020, Plaintiff filed a class action complaint in Riverside County Superior Court alleging various violations of California wage and hour law by Defendants Samuel, Son & Co. (USA), Inc. ("SSC"), Sierra Aluminum Company ("Sierra"), and Main Steel's ("MS," and collectively, "Defendants"). (See "Complaint," Dkt. No. 1-1.) On March 23, 2020, SSC removed the matter. ("Notice of Removal" or "NOR," Dkt. No. 1.)[1]

---

[1] In support of the NOR, SSC filed the declaration of Christopher Decker ("Decker Declaration," Dkt. No. 5), the declaration of Ariel Kumpinsky ("Kumpinsky Declaration," Dkt. No. 5-1), the declaration of Diana Rodriguez ("Rodriguez Declaration," Dkt. No. 13), the declaration of Cecile Chung ("Chung Declaration," Dkt. No. 5-3), and the declaration of Sage Stone ("Stone Declaration," Dkt. No. 5-4).

On March 30, 2020, Defendants filed a motion to dismiss. ("Motion to Dismiss," Dkt. No. 12.) On April 23, 2020, the Court granted the Motion to Dismiss and granted Plaintiff leave to amend the Complaint. ("Order to Dismiss," Dkt. No. 20.)

On May 18, 2020, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 22.) In the FAC, Plaintiff alleges eight causes of action on behalf of himself and all others similarly situated: (1) violations of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violations of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violations of California Labor Code § 226.7 (unpaid rest period premiums); (4) violations of California Labor Code §§ 1194 and 1197 (unpaid minimum wages); (5) violations of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violations of California Labor Code § 226(a) (non-compliant wage statements); (7) violations of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (8) violations of California Business & Professions Code § 17200, et seq. ("UCL").

On April 22, 2020, Plaintiff filed the Motion.[2] (See Motion.) In support of the Motion, Plaintiff filed a memorandum of points and authorities ("Memo," Dkt. No. 18-1), the declaration of Phillip Song ("Song Declaration," Dkt. No. 18-2), and a proposed order (Dkt. No. 18-3). On May 11, 2020, SSC opposed the Motion. ("Opposition," Dkt. No. 21.)[3] In support of the Opposition, SSC filed the supplemental declaration of Christopher W. Decker ("Supplemental Decker Declaration," Dkt. No. 21-1), the supplemental declaration of Ariel Kumpinsky ("Supplemental Kumpinsky Declaration," Dkt. No. 21-4), and three exhibits ("Exhibit A," Dkt. No. 21-2; "Exhibit B," Dkt. No. 21-3; "Exhibit C," Dkt. No. 21-5). On May 18, 2020, Plaintiff replied. ("Reply," Dkt. No. 23.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). The Class

---

[2] While Plaintiff filed the Motion prior to dismissal of the Complaint and to the filing of the FAC, the Court properly considers the Motion because a motion to remand challenging the amount in controversy requires courts to assess the amount in controversy "at the time of removal[.]" Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018).

[3] SSC requests that the Court dismiss the Motion because Plaintiff failed to substantially comply with Local Rule 7-3's meet and confer requirements. (Opposition at 6); see also L.R. 7-3 (requiring parties to meet and confer prior to the filing of any motion). Striking or dismissing a motion for a failure to meet and confer, however, is "inappropriate where the non-movant suffered no prejudice." Santos v. TWC Admin. LLC, 2014 WL 12703021, at *6 (C.D. Cal. Sept. 15, 2014). Because SSC does not assert that they were prejudiced by the failure to meet and confer, the Court addresses the merits of Plaintiff's Motion.

Action Fairness Act ("CAFA") vests federal courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and an amount in controversy ("AIC") that exceeds $5,000,000.  28 U.S.C. § 1332(d).

Generally, courts must "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "However, 'no anti-removal presumption attends cases invoking CAFA…'"  Garcia v. Wal-Mart Stores, Inc., 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)).  Instead, Congress intended CAFA to be interpreted expansively.  Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal.  28 U.S.C § 1446(a).  To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices."  Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000."  Garcia, 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197).  A removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  Dart Cherokee, 135 S. Ct. at 553.  Where a plaintiff questions the AIC asserted, further evidence establishing that the amount alleged meets the jurisdictional minimum is required.  Id. at 554.  "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)).  "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  Id. at 1198.

### III.   DISCUSSION

Plaintiff moves the Court to remand this matter to state court.  (See Motion.)  In so moving, Plaintiff contends that SSC removed this matter based on inadmissible evidence.  (Memo at 12.)  In particular, Plaintiff argues that SSC bases its amount in controversy ("AIC") on unfounded and unauthenticated declarations that fail to establish each declarant's personal knowledge of SSC's employment data.  (Id.)  In response, SSC points out that the declarations

establish a chain of custody and authenticate the contents of the employment records used to calculate the AIC.  (Opposition at 9.)  The Court agrees with SSC.

In the NOR, SSC calculated the potential value for Plaintiff's claims by reference to its own employment records.  (See NOR.)  Along with the NOR, SSC filed three declarations detailing proof of the authenticity of the underlying employment records supporting its calculations.  (Kumpinsky Declaration; Decker Declaration; Rodriguez Declaration.)  The Rodriguez Declaration details Rodriguez's personal knowledge of SSC's employment records as the human resources manager for SSC.  (Rodriguez Declaration ¶ 1.)  Rodriguez states that she and a colleague collaborated to prepare spreadsheets of collected payroll and employment data from a review of SSC's records.  (Id. ¶¶ 4–5.)  Rodriguez provides a summary of the different spreadsheets in the form of a chart.  (Rodriguez Declaration at 8); Fed. R. Evid. 1006 (providing that the proponent of a document need not submit the original if they submit a summary of an otherwise admissible writing too voluminous to present in its entirety);  Fed. R. Evid. 803(6) (providing that regularly maintained business records are admissible evidence so long as someone can testify as to their authenticity).  Rodriguez describes forwarding these spreadsheets to Decker; Decker describes transmitting the spreadsheets to Kumpinsky.  (Rodriguez Declaration ¶ 4; Decker Declaration ¶¶ 2–3.)  Kumpinsky, a data analyst and consultant hired by SSC, then attests that he used the payroll and employment data in the spreadsheets to conduct the calculations referenced in the NOR.  (Kumpinsky Declaration ¶ 4.)  As a result, SSC has established both the authenticity and chain of custody of the business records underlying the NOR's calculations.  See Perez Reyes v. Nat'l Distribution Centers, LLC, 2018 WL 679451, at *4 (C.D. Cal. Feb. 1, 2018) (overruling objection to authenticity of removal documents where defendant provided proof of underlying data in the form of a declaration from a human resources employee familiar with underlying employment data and a summary of the employment data).

Plaintiff contends that even if SSC's declarations supporting the calculations in the AIC are admissible, the calculations artificially inflate the AIC and are otherwise insufficient to establish CAFA's $5,000,000 AIC requirement.  (Memo at 15.)  Plaintiff argues that the allegations in the Complaint only establish "a pattern and practice" of wage violations for some but not all class members employed by SSC.  (Memo at 15–16 (citing Complaint ¶¶ 61, 70).)  Plaintiff thus reasons that the NOR's assumption that each employee suffered one deprivation of a meal and rest period per week is belied by the allegations in the Complaint and is otherwise unsupported by SSC's declarations.  (Id.)

In calculating the AIC, a removing defendant is "permitted to rely on 'a chain of reasoning that includes assumptions.'"  Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th Cir. 2019) (quoting Ibarra, 775 F.3d at 1199 (9th Cir. 2015)).  While these assumptions cannot be pulled from thin air, they need not be proven and only require some reasonable ground underlying them.  Id. at 925, 927.  "An assumption may be reasonable if it is founded on the allegations of the complaint."  Id. at 925.  Where the allegations in a complaint do not specify the exact frequency or severity of the violations alleged, "a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy."  Duberry v. J.

Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing Ibarra, 775 F.3d at 1199). A defendant provides "real evidence" and establishes that their assumptions are reasonable by "relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing Ibarra, 775 F.3d at 1199). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016).

Here, Plaintiff contends that SSC unjustifiably and arbitrarily assumed a violation rate of one meal and one rest period violation each week for each employee — or a 20% violation rate. (Memo at 15.) Plaintiff argues that the declarations submitted with the NOR do not provide sufficient evidence to justify the 20% violation rate because they omit any evidence of the average or actual number of work weeks, shifts, and shift lengths class members worked during the class period. (Id. at 18.) Plaintiff points out that such evidence is crucial to determining some reasonable basis for the frequency with which class Plaintiffs were deprived of meal and rest periods. (Id.) In response, SSC offers Plaintiff precisely the proof he asks for: it provides a supplemental declaration from Kumpinsky assessing SSC's employment records and identifying 382,269 shifts that employees worked without a recorded meal period during the alleged class period. (See Supplemental Kumpinsky Declaration.)[4] The supplemental declaration then calculates the average hourly rates for all 382,269 shifts — a figure that amounts to $15.62 per hour.[5] (Id. ¶ 5.) Kumpinsky then multiplies the average hourly rate by the total amount of shifts without a recorded meal period, resulting in a figure of $5,961,661.58.[6] Thus, even if Plaintiff is correct that the NOR's original calculation was premised on arbitrary assumptions, the Supplemental Kumpinsky Declaration relies on reasonable extrapolations of identified employment data to establish that owed wages for class Plaintiffs' meal period claims alone potentially exceed $5,000,000.

Plaintiff protests that SSC's updated meal period calculation is founded on the erroneous assumption that a "meal period violation occurred for all shifts without a recorded meal break" and fails to consider alternative explanations for workers skipping meal periods,

---

[4] Although Plaintiff does not challenge its authenticity, the Supplemental Kumpinksy Declaration bases its calculation on the same employment records validated by the Rodriguez and Decker Declarations. (Supplemental Kumpinsky Declaration ¶ 3.) Thus, the Supplemental Kumpinsky Declaration is properly authenticated.

[5] The average hourly pay of the class Plaintiffs deprived of meal periods is relevant because the penalty for depriving an employee of a meal period is an additional hour of pay at an employee's usual hourly rate. See Cal. Labor Code § 226.7(c) ("If an employer fails to provide an employee a meal period… the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal… period is not provided.").

[6] 382,269 x 15.64 = 5,961,661.58.

waiving meal periods, or simply failing to record their meal periods.  (Reply at 10–11.)  However, SSC need not submit evidence that categorically excludes all possible alternative explanations for damages.  Instead, SSC need only establish some reasonable grounds for removal.  Arias, 936 F.3d at 925, 927;  see Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1206 n.4 (E.D. Cal. 2008) ("Plaintiff cannot avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the [] maximum [recovery].").  To expect SSC to do more at this stage is to expect it to prove Plaintiff's case simply to justify removal.  But a defendant removing a case is "not required to comb through the records to identify and calculate the exact frequency of [alleged] violations."  Salcido, 2016 WL 79381, at *6;  see also Duberry, 2015 WL 4575018, at *3 ("[C]ourts are satisfied [with an AIC calculation] when defendants… submit[] calculations derived from actual evidence of potential violations observed in a sample of data, which the defendant then extrapolates to the putative class.") (internal citation omitted) (emphasis added).  The supplemental declaration establishes reasonable grounds for SSC's AIC calculation by a preponderance of the evidence.  Accordingly, because the supplemental declaration's reasonable calculation of Plaintiff's meal period claims is over $5,000,000, removal of this matter was warranted.[7]  The Motion is DENIED.

## IV. CONCLUSION

For the reasons described above, the Court DENIES the Motion.  The hearing set for June 1, 2020 is VACATED.

**IT IS SO ORDERED.**

---

[7] Because the value of Plaintiff's meal period claims alone reasonably exceeds the $5,000,000 AIC requirement, the Court need not assess the reasonableness of SSC's calculations for Plaintiff's other claims.